ANDREW M. CALAMARI
REGIONAL DIRECTOR
Aaron P. Arnzen
Maureen P. King
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Suite 400
New York, New York 10281-1022
(212) 336-0573 (Arnzen)
E-mail: arnzena@sec.gov

**12 CIV 9187**

RECEIVED
DEC 18 2012
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,          :
                                             :
                    Plaintiff,               :
                                             :
    -against-                                :
                                             :
THESTREET, INC.                              :
                                             :
                    Defendant.               :
                                             :
------------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission"), for its Complaint against defendant TheStreet, Inc. (formerly known as TheStreet.com, Inc.) ("TheStreet," or the "Company"), alleges:

### SUMMARY

1.   In this action, the Commission charges TheStreet with failing to maintain sufficient internal controls over financial reporting, filing false reports, and failing to keep true and accurate books and records. These charges arise from improper revenue recognition throughout 2008 at a former subsidiary ("Subsidiary A") of TheStreet.

2. TheStreet, a financial media company, acquired Subsidiary A, which specializes in online promotions such as sweepstakes, in 2007. Prior to the acquisition, the federal securities laws did not require Subsidiary A, a privately held company, to maintain a system of internal controls sufficient to assure the accuracy of its financial statements and related records.

3. After acquisition, however, TheStreet was required to implement such a system of internal controls at Subsidiary A. Despite this obligation, TheStreet failed to implement sufficient controls over Subsidiary A, and in particular, over Subsidiary A's recognition of revenue.

4. This lack of internal controls allowed Subsidiary A to: (1) improperly recognize revenue based on sham transactions; (2) use the percentage of completion method of revenue recognition without meeting fundamental prerequisites to doing so, including reliably estimating and documenting progress toward the completion of relevant contracts; and (3) prematurely recognize revenue when Subsidiary A had not performed actual work and thus had not, in reality, earned the revenue.

5. During the relevant period, Subsidiary A's financial results were consolidated with TheStreet's for financial reporting purposes. Thus, the improper revenue that was reflected on Subsidiary A's books resulted in material misstatements to TheStreet's operating income or loss as reported in TheStreet's financial statements. TheStreet filed with the Commission and distributed to the investing public materially misstated financial statements in the Company's Forms 10-Q for the first, second and third quarters of 2008, and its Form 10-K for the fiscal year of 2008. On February 8, 2010, TheStreet restated its 2008 Form 10-K and disclosed a number of improprieties related to revenue recognition at Subsidiary A, including transactions that lacked economic substance, internal control deficiencies and improper accounting for certain contracts.

## VIOLATIONS

6. As a result of the misconduct alleged in this Complaint, TheStreet violated Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12.b-20, 240.13a-1 and 240.13a-13].

## JURISDICTION AND VENUE

7. The Commission brings this action pursuant to the authority conferred by Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], seeking a permanent injunction against future violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12.b-20, 240.13a-1 and 240.13a-13].

8. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 77u(e) and 78aa].

9. The Defendant, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or the means or instrumentalities of, interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

10. Venue lies in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of Defendant's alleged transactions, acts, practices, and courses of business occurred in the Southern District of New York. Additionally, during the relevant period, shares of TheStreet were traded on NASDAQ, which is located in the Southern District of New York.

## THE DEFENDANT

11. **TheStreet, Inc.**, formerly known as TheStreet.com, Inc., is incorporated in Delaware and maintains its principal place of business in New York, New York. TheStreet has been an SEC-reporting company since 1999, and its stock is quoted on the NASDAQ stock exchange. As a result of the misstatements alleged herein, TheStreet restated its Form 10-K for the fiscal year 2008 and its Form 10-Q for first quarter of 2009.

## FACTS

### A. The Lack of Internal Controls at TheStreet's Subsidiary A

12. TheStreet acquired Subsidiary A, a relatively small, privately-held company, in August 2007. TheStreet made this acquisition with the expectation that it would, according to TheStreet's press release, "propel TheStreet.com forward in its strategy to become a premier one-stop shop for advertisers, advertising agencies and corporations in search of a broad spectrum of innovative, interactive advertising solutions, while further expanding the Company's current advertising offerings."

13. At the time of acquisition, Subsidiary A did not maintain a sufficient system of internal controls; nor did the federal securities laws require Subsidiary A to do so. After the acquisition, though, it was incumbent upon TheStreet to implement internal controls at Subsidiary A to assure that, among other things, its financial records were complete and accurate, and its financial statements were prepared in compliance with applicable accounting standards.

14. TheStreet failed to implement such a system of internal controls at Subsidiary A throughout 2008. As a result, financial improprieties at Subsidiary A went undetected and uncorrected, leading TheStreet to file materially misstated financial statements in the Forms 10-

Q for each quarter of 2008, and the Form 10-K for the full year of 2008, that the Company filed with the Commission and distributed to the investing public.

### B. Applicable Standards for Revenue Recognition

15. At all times relevant to this complaint, TheStreet was a public company, and its financial statements were required to conform with U.S. GAAP. U.S. GAAP, and in particular, *Staff Accounting Bulletin No. 104* ("SAB 104"), issued by the Commission's staff, and *AICPA Statement of Position 97-2, Software Revenue Recognition* ("SOP 97-2"), issued by the American Institute of Public Accountants, prohibited TheStreet from recognizing revenue based on its provision of services to customers unless each of the following four criteria was met: (a) there was persuasive evidence of an arrangement; (b) delivery had occurred; (c) the fee was fixed or determinable; and (d) collectability was probable.

16. Through at least 2008, Subsidiary A often recognized revenue based on work it performed before the relevant project was completed in its entirety. Under U.S. GAAP, this was permissible only if Subsidiary A fulfilled the requirements of *AICPA Statement of Position 81-1, Accounting for Performance of Construction-Type and Certain Production-Type Contracts* ("SOP 81-1"). Under SOP 81-1, revenue could be recognized to the extent work was performed and progress was made toward the completion of a project, but only when management reliably estimated and documented the extent of such progress.

### C. Financial Misstatements at TheStreet's Subsidiary A

17. After its acquisition of Subsidiary A, TheStreet repeatedly recognized revenue in violation of these U.S. GAAP provisions because of a lack of sufficient internal controls. More specifically, TheStreet engaged in at least three forms of accounting improprieties. The first, and most egregious, involved sham transactions with friendly counterparties that had little or no

economic substance. The improprieties included: (a) fabricating revenue-producing contracts to falsely document a transaction that was, in reality, a loan to a customer and the customer's loan repayment; (b) obtaining a false audit confirmation from that customer stating that Subsidiary A had performed services pursuant to the fabricated contract when, in fact, Subsidiary A had not done so; (c) with respect to another transaction, altering documents used to support revenue recognition after those documents were executed to reflect terms to which counterparties did not agree; (d) papering transactions in order to recognize revenue when no such revenue had been, or would ever be, earned; (e) making misrepresentations to TheStreet's finance department that Subsidiary A needed fixed assets purchased in a round-trip a transaction when the Company had no legitimate business need for the fixed asset; and (f) backdating contracts that formed the basis for revenue recognition.

18.  Second, the lack of sufficient internal controls allowed revenue to be inappropriately recognized based on the so-called percentage of completion method pursuant to SOP 81-1. In order to recognize revenue, Subsidiary A was required to reliably estimate its progress toward completion of work on relevant contracts, which required a robust system to track and document work performed, milestones, and related costs. Instead of utilizing such a system, revenue was routinely recognized based soley on the unsubstantiated "say so" of executives at Subsidiary A and TheStreet. In many of these cases, revenue recognition was inappropriate not only due to the fact that SOP 81-1's documentation requirements went unmet – more fundamentally, Subsidiary A had not performed the required work or reached the related milestones in several instances, and the revenue was not actually earned.

19.  Third, because of the lack of internal controls, TheStreet prematurely recognized at least $235,000 based on a transition services agreement with a large media company. As part

of this agreement, the customer agreed to engage Subsidiary A to provide $250,000 worth of services between October 2007 and April 2009. In the event no services were needed, Counter-party N would pay the $250,000 to Subsidiary A in April 2009. Under U.S. GAAP, Subsidiary A should have recognized revenue based on this agreement as it was earned up until April 2009. Despite the fact that the Subsidiary A performed services under this agreement reasonably valued at no more than $15,000 in 2008 – and thus should have recognized only this amount as revenue during that year – TheStreet improperly recognized revenue of $154,000 in the third quarter of 2008.

20. In sum, ineffective and insufficient internal controls over revenue recognition at Subsidiary A failed to prevent, and effectively set the stage for, the creation of false financial statements and records. As a result, TheStreet overstated its operating income or understated its operating loss for the first, second, third, and fourth quarters of 2008 by approximately 31%, 118%, 31%, and 10.5%, respectively, and for the full fiscal year by approximately 152%. These results were reported in financial statements included in the Forms 10-Q for the first, second, and third quarters of 2008, and the Form 10-K for the full year of 2008, which the Company filed with the Commission and distributed to the investing public.

### FIRST CLAIM FOR RELIEF

**Violations of Section 13(a) of the Exchange Act and
Rules 12b-20, 13a-1 and 13a-13 Thereunder**

21. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 46.

22. TheStreet failed to make required reports and to include in the Company's financial reports accurate information or, in addition to the information expressly required to be stated in such reports, such further material information as was necessary to make the statements

7

made therein, in light of the circumstances in which they were made, not misleading.

23. By reason of the foregoing, TheStreet, singly or in concert, directly or indirectly violated, and unless enjoined will continue to violate, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a.1 and 240.13a.13].

## SECOND CLAIM FOR RELIEF

### Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act

24. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 46.

25. TheStreet failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of its assets; and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

    a. transactions were executed in accordance with management's general or specific authorization;

    b. transactions were recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles or any other criteria applicable to such statements, and to maintain accountability for assets;

    c. access to assets was permitted only in accordance with management's general or specific authorization; and

    d.    the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences.

26. By reason of the foregoing, TheStreet, singly or in concert, directly or indirectly violated, and unless enjoined will continue to violate, Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commission respectfully requests that the Court enter a final judgment against the Defendants granting the following relief:

### I.

Finding that the Defendant violated the securities laws and rules promulgated thereunder as alleged herein.

## II.

Permanently enjoining the Defendant from future violations of the federal securities laws as alleged in this complaint.

## III.

Granting such other and further relief as this Court seems just and proper, including such equitable relief as may be appropriate or necessary for the benefit of investors.

Dated: December 17, 2012
New York, New York

Andrew M. Calamari
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center
New York, New York 10281-1022
(212) 336-0573 (Arnzen)

Of Counsel:

Aaron P. Arnzen
Maureen P. King